## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

OMAR MARTÍNEZ-MORALES, et al.,

    Plaintiffs,

        v.                               CIVIL NO. 11-1660 (MEL)

VICTAULIC CO., et al.,

    Defendants.

### OPINION AND ORDER

Pending before the court is a motion *in limine* filed by defendant Victaulic Co. ("defendant" or "Victaulic"), along with plaintiffs' response in opposition, defendant's reply, and plaintiffs' surreply. (D.E. 40; 52; 62; 70). Defendant seeks the exclusion of the testimony of plaintiffs' expert witness Dr. Boris Rojas Rodríguez ("Dr. Rojas") under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).[1]

### I.   ANALYSIS

Plaintiffs seek to present testimony from Dr. Rojas as an expert witness in neurology. For a motion *in limine* under Daubert, "'[i]t is the proponent of the expert who has the burden of proving admissibility' … by a preponderance of the evidence." Henricksen v. ConocoPhillips Co., 605 F. Supp. 2d 1142, 1147, 1154 (E.D. Wash. 2009) (quoting Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996)). As such, plaintiffs, as "the proponent[s] of the evidence," must "show that the expert's conclusion has been arrived at in a

---

[1] The "trial court has discretion not to hold pretrial evidentiary reliability hearing in carrying out its gatekeeping function …." United States v. Díaz, 300 F.3d 66, 74 (1st Cir. 2002) (citing United States v. Nichols, 169 F.3d 1255, 1262–64 (10th Cir. 1999)). Because, as seen in the forthcoming analysis, "no novel challenge is raised" by defendant's motion *in limine* (D.E. 40), it is unnecessary to hold a Daubert hearing. United States v. Pena, 586 F.3d 105, 115 (1st Cir. 2009); cf. Samaan v. St. Joseph Hosp., 764 F. Supp. 2d 240, 246 (D. Me. 2011) (noting that it is "routine" and within the trial court's discretion to hold a Daubert hearing "[w]hen a serious issue of scientific reliability has been raised").

scientifically sound and methodologically reliable fashion." Ruiz-Troche v. Pepsi Cola of Puerto

Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998).

### A.    Qualifications

Dr. Rojas's curriculum vitae indicates that he received his medical degree from the

University of Puerto Rico, Río Piedras Campus, in 1971.  (D.E. 52-1, at 1).  He was a practicing

neurologist between 1975 and 2011.  Id. at 2.[2]  Dr. Rojas has been testifying as an expert witness

in neurology since 1981.  (D.E. 65-1, at 14:6–11).  At his deposition, Dr. Rojas stated that he

testified in approximately twenty-five to thirty cases over the course of the prior four years.  Id.

at 13:15–21.  Dr. Rojas also indicated that he was certified in Evaluation of Disability and

Impairment Rating by the American Academy of Disability, a Fellow of the American Academy

of Disability Evaluating Physicians, and a member of Colegio de Médicos Cirujanos de Puerto

Rico and Sociedad de Neurofisiología de Puerto Rico.  (Id. at 12:3–20; D.E. 52-1, at 1, 3).

Dr. Rojas also had been a Certified Independent Medical Examiner ("CIME") for fifteen years.

(D.E. 65-1, at 11:13–24).

Defendant argues that Dr. Rojas is not qualified to present testimony as an expert witness

under Rule 702 because, at the time he evaluated plaintiff Omar Martínez ("plaintiff" or

"Martínez"), he was no longer a CIME.  Id. at 11:10–12; (D.E. 40-1, at 1).  Assuming for

argument's sake that defendant's factual premise is true,[3] defendant presents no argument as to

why an individual must be certified as a CIME in order to be qualified as an expert witness in

---

[2] Although his curriculum vitae indicates that Dr. Rojas had a solo practice in adult and child neurology from 1975 to 2011, (see D.E. 52-1, at 2), he testified at his deposition on February 21, 2013, that he "ha[s] a solo practice" when asked where he was "currently employed."  (D.E. 65-1, at 7:23–8:3).  Regardless, Dr. Rojas's thirty-six years of experience as a practicing neurologist between 1975 and 2011 certainly constitute experience sufficient to qualify him as an expert witness in neurology under Rule 702.  Moreover, no argument has been submitted that Dr. Rojas lacks the license or certifications required to practice neurology and that such fact prevents him from being qualified as an expert under Rule 702.

[3] Dr. Rojas testified that he did not renew his CIME certification "in April, May last year."  (D.E. 65-1, at 11:10–12).  In his report, he indicated that he evaluated plaintiff on April 13, 2012, and October 5, 2012.  (D.E. 40-1, at 1).

2

neurology.   To the contrary, Dr. Rojas's education, years of experience as a practicing neurologist and expert witness in neurology, and other certifications and memberships provide sufficient credentials to qualify him as an expert witness in neurology under Rule 702.  See Tokio Marine & Fire Ins. Co., Ltd. v. Grove Mfg. Co., 958 F.2d 1169, 1175 (1st Cir. 1992) ("A witness may qualify as an expert on any one of Rule 702's five listed grounds." (internal quotation and alteration omitted)); Am. Tech. Res. v. United States, 893 F.2d 651, 656 (3d Cir. 1990) ("The basis of qualification can be practical experience as well as academic training and credentials.").

In addition, defendant contends that Dr. Rojas should not be considered an expert under Rule 702 because of two cases in the District of Puerto Rico in which his testimony was limited or precluded.   In Sánchez-Lamboy v. C-Cort Properties Corporation et al., Civ. No. 07-1849 (JP), the court granted a motion *in limine* to exclude plaintiff's expert witness Dr. Rojas because his report did not comply with Rule 26 of the Federal Rules of Civil Procedure due to failure to include Dr. Rojas's curriculum vitae, compensation in the case, and a list of other cases in which he testified, and because his report did not distinguish among plaintiff's injuries sustained in two separate accidents, only one of which was relevant to the case.  Defendant has not submitted any allegations that either of these defects are present in the instant case.  No evidence has been presented that, in the instant case, plaintiffs failed to produce Dr. Rojas's curriculum vitae, compensation, or list of previous cases.  Nor has any evidence been submitted that plaintiff was involved in multiple accidents and that Dr. Rojas's report failed to distinguish among plaintiff's injuries among said accidents.  As such, the exclusion of Dr. Rojas's testimony in Sánchez-Lamboy does not prevent Dr. Rojas from being qualified as an expert witness in the instant case.

Defendant also presents evidence that Dr. Rojas's testimony was precluded in a District of Puerto Rico case before U.S. District Judge Jay A. García-Gregory from more than ten years ago.  (D.E. 65-1, at 16:6–10, 18:25–19:1).  According to Dr. Rojas, the case involved "reflex sympathetic dystrophy, or chronic regional pain syndrome," and that his testimony was precluded "when the lawyer that hired [him]," a lawyer for the Puerto Rico Department of Justice, "asked [him] a question about a psychiatric diagnosis."  Id. at 15:22–16:1, 17:19–25. Nevertheless, no specificity has been provided as to the name, citation, or date of the aforementioned case.  Moreover, neither plaintiffs nor defendant has submitted the basis for the exclusion of Dr. Rojas's testimony in said case.  It is not readily apparent that Dr. Rojas's testimony should be excluded in the instant case on the basis of the exclusion of his testimony on unspecified grounds in an unspecified case from more than ten years ago.

## B.    Factual Basis

According to defendant, Dr. Rojas's testimony is inconsistent with the evidentiary record and, as such, is not "based on sufficient facts or data" pursuant to Rule 702.  Fed. R. Evid. 702(b).  The rule's requirement of "sufficient facts or data," however, "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."  Fed. R. Evid. 702 advisory committee's note.  As such, there merely must be "a plausible evidentiary basis for an expert's opinion."  Downeast Ventures, Ltd. v. Washington Cnty., No. 05-87 BW, 2007 WL 679887, at *2 (D. Me. Mar. 1, 2007).

""[A]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony.'"  Morales v. Monagas, 723 F. Supp. 2d 411, 416 (D.P.R. 2010) (quoting Brown v. Wal-Mart Stores, Inc., 402 F. Supp. 2d 303, 308 (D. Me. 2005)).  Correspondingly, "questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that

4

opinion rather than its *admissibility* and should be left for the jury's consideration." Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original) (internal quotation omitted). "It is only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the [factfinder] must such testimony be excluded." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (internal quotation omitted). In other words, "'when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a [factfinder]'s verdict.'" Sullivan v. Nat'l Football League, 34 F.3d 1091, 1105 (1st Cir. 1994) (quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993)). A crucial element of this analysis, therefore, is whether the contradictory record facts are indisputable. If the contradictory facts are at issue in a case, then the expert testimony, if otherwise admissible, may be presented to the factfinder. Cf. Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988) ("The bulk of [defendant]'s arguments against admissibility are simply a rehashing of [a] central factual dispute[] of the case dressed up as attacks on the expert's testimony through Rule 703.").

Defendant contends that the factual assumptions that plaintiff Omar Martínez ("plaintiff" or "Martínez") lost consciousness after the accident on July 13, 2010, and was disoriented and vomited blood and food content upon recovering from unconsciousness are not supported by the evidentiary record. (D.E. 40, at 10–11 (citing D.E. 40-1, at 1–2; D.E. 65-1, at 36, 49–50, 58–59)). As Dr. Rojas acknowledged, the records of Hospital HIMA San Pablo Caguas ("HIMA") indicate that Martínez told the examining physician that he did not lose consciousness. (D.E. 65-1, at 49:14–18). Moreover, as interpreted by Dr. Rojas in his deposition, the HIMA records also indicate that plaintiff had a Glasgow rating of 15, meaning that plaintiff had "[n]ormal … [v]ision, movements, verbal orders," and was oriented in person, place, and time. Id. at 50:13–

25.  When asked whether, in the medical record, there is "any indication that Omar Martínez started vomiting blood and food," Dr. Rojas responded in the negative.  Id. at 59:7–11.

According to Dr. Rojas's report, Martínez stated that he felt "disoriented and drunk-like" at HIMA and that, when he woke up, he started vomiting "blood and food."  (D.E. 40-1, at 1–2). Martínez's mother Lelis Morales ("Morales") indicated that he was "disoriented" and "unable to recognize her."  Id. at 1.  In his deposition, Dr. Rojas testified that he relied solely on statements given by Martínez and Morales during interviews with Dr. Rojas for the factual premise that Martínez "was rendered unconscious at the accident site and that he was disoriented and unable to recognize his mother."  (D.E. 65-1, at 48:18–49:1).

Even where "the factual underpinning of an expert opinion is weak, it is a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury." Moya-Soto v. Hosp. Dr. Cayetano Coll y Toste, Inc., Civ. No. 08-2024 (JAF), 2010 WL 234830, at *2 (D.P.R. Jan. 14, 2010) (quoting Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 21 (1st Cir. 1994)).  Simply because the factual basis of Dr. Rojas's opinions includes information obtained from Martínez and Morales does not mean that his opinions are not based on sufficient facts or data for purposes of Rule 702.  It is clear that Dr. Rojas has a plausible evidentiary basis for determining that Martínez lost consciousness, was disoriented, and vomited food and blood after awaking.  As such, the credibility of Dr. Rojas's testimony is an issue which "should be left for the jury's consideration."  Primrose Operating Co., 382 F.3d at 562 (internal quotation omitted).

Dr. Rojas concludes in his report that plaintiff had a physical whole person impairment of 2% due to facial asymmetry and scars.  (D.E. 40-1, at 4).  According to Dr. Rojas, Martínez's "left eye was smaller than the right one due to the fact that the left eyelid did not elevated [sic] at

6

the same level as the right one[,] … produc[ing] a mild asymmetry of the left upper quadrant of his face when compared with the right superior facial quadrant." Id. at 3.  Dr. Rojas also stated that, when he "examined Mr. Martínez [on April 13, 2012], it was established that he had scars in the frontal area and in the left upper eyelid." Id.  Defendant contends that Dr. Rojas's findings are controverted by a note in the medical record dated March 17, 2011, from Dr. Noel Pérez, plaintiff's treating ophthalmologist, indicating "that there was excellent ptosis repair outcome so far." (D.E. 65-1, at 78:24–79:3).  Defendant, however, submits no argument that Dr. Rojas is not qualified to make such findings regarding facial asymmetry.  Nor does defendant argue that conducting an examination of a patient is an insufficient methodology by which a doctor may conclude that one eye of said patient is smaller than the other or that said patient's eyelid does not elevate to the same level as the other.  Rather, defendant merely offers allegedly contradictory evidence.  The focus of a Daubert inquiry "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.  As such, given that Dr. Rojas's qualifications and methodology in this area appear to be uncontested, and that defendant instead focuses on disputing Dr. Rojas's conclusions, the "appropriate means of attacking" such evidence is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Id. at 596.

Defendant also argues that Dr. Rojas should be excluded as an expert because he did not review all of the available medical records in preparing for his report.  (D.E. 40, at 9).  Nevertheless, the mere "fact that [the witness] could have reviewed other materials in formulating his opinion does not disqualify him as an expert." Rich v. City of Savannah, No. 1:02-1222 T/P, 2005 WL 6739798, at *3 (W.D. Tenn. Aug. 25, 2005).  "Rule 702 … does not require that an expert consider all relevant evidence[,] … only [that] the expert's testimony … be

based on sufficient facts and data to make the testimony reliable." Id.  As such, whether

Dr. Rojas failed to consider certain portions of the medical record is relevant to the extent that it

sheds light on whether Dr. Rojas's testimony is based on sufficient facts or data.

Dr. Rojas reviewed medical records from the State Insurance Fund Industrial Hospital

("Industrial Hospital"), Dr. Richard Avilés Michel's ("Dr. Avilés") assessment, and Dr. Milagros

Ortiz's ("Dr. Ortiz") report.  (D.E. 62, ¶ 3).  Dr. Rojas evaluated Martínez on two separate

occasions.  (See D.E. 40-1, at 1).  In particular, Dr. Rojas noted that he reviewed reports

concerning plaintiff's MRI and CT scan.  (D.E. 65-1, at 39:1–7).  Dr. Rojas testified that he

"ha[d] a clear picture of what really happened" and "that was enough for [him] to get to an

opinion." Id. at 39:8–10.  Plaintiffs point out that the Industrial Hospital records encompass the

period from July 14, 2010, to June 21, 2011.  (D.E. 52, at 4 (citing D.E. 52-2, at 7:18–23)).

Moreover, after submitting his report, Dr. Rojas reviewed the medical record of Dr. Edwin

Rivera ("Dr. Rivera"), who had been Martínez's treating physician since December 1, 2009, and

concluded that the opinions in his report remained "unaltered."  (D.E. 52-3).  As such, the mere

fact that Dr. Rojas did not review every piece of relevant evidence does not disqualify him from

being an expert under Rule 702.

Dr. Rojas concludes in his report that plaintiff had a neurological whole person

impairment of 23%.  (D.E. 40-1, at 4).  Defendant argues that Dr. Rojas's analysis is "inherently

unreliable" because "relies almost exclusively on the neuropsychological assessment performed

by Dr. Avilés."  (D.E. 40, at 13 (citing D.E. 65-1, at 26–27)).  In particular, defendant contends

that Dr. Rojas relied on Dr. Avilés's "interpretation of the medical records."  Id. (citing D.E. 65-

1, at 30–31)).[4]   As an initial matter, as discussed above, Dr. Rojas, in addition to reviewing

Dr. Avilés's report, also conducted two evaluations of Martínez and reviewed the Industrial

Hospital medical record, Dr. Ortiz's report, and, after producing his expert report, Dr. Rivera's

medical record.

Plaintiffs argue that Dr. Rojas is permitted to rely on Dr. Avilés's report under Rule 703,

which authorizes expert witnesses to "base an opinion on facts or data" where "experts in the

particular field would reasonably rely on those kinds of facts or data in forming an opinion on

the subject."   Fed. R. Evid. 703.   "[P]hysicians commonly base their opinions on tests and

examinations performed by other physicians …."   Manocchio v. Moran, 919 F.2d 770, 780 (1st

Cir. 1990).   "Doctors routinely rely on observations reported by other doctors, and it is

unrealistic to expect a physician, as a condition precedent to offering opinion testimony in a

personal injury case, to have performed every test, procedure, and examination himself."   Crowe

v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007) (internal citation omitted).

In its reply, defendant seeks to distinguish these cases on the grounds that "treatment and

reliability afforded to medical records is hardly extensive to reports prepared by paid expert

witnesses in the context of litigation."   (D.E. 62, ¶ 5).   In support, defendant cites authority for

the proposition that medical records are considered to be reliable for purposes of hearsay.   Id.

(citing Manocchio, 919 F.2d at 780 ("[H]ospital records containing statements of medical

opinions constitute a 'firmly rooted exception' to the hearsay rule."); Zaragoza v. Ebenroth, 331

Ill. App. 3d 139, 142, 770 N.E.2d 1238, 1242 (2002) ("Reliability can be inferred without more

in a case where the evidence falls within a firmly rooted hearsay exception.")).   Rule 703,

however, specifically provides that facts or data which "experts in the particular field would

---

[4] Defendant also incorporates by reference its motion *in limine* requesting exclusion of Dr. Avilés's testimony (D.E. 39).   (See D.E. 40, at 13).   As such, the opinion and order denying said motion (D.E. 80) is also hereby incorporated by reference.

reasonably rely on … need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. The question is not whether Dr. Rojas is permitted to testify as to Dr. Avilés's report at trial—in other words, whether said report is admissible as evidence—but whether he may base his testimony in part on said opinion under Rule 703. As such, whether Dr. Avilés's report would be admissible under a particular hearsay exception is irrelevant.

Defendant also argues that medical records are considered to be "trustworthy because 'there is no more reason to expect doctors to render an unreliable diagnosis than there is to expect them to base diagnoses on untrustworthy facts.'" (D.E. 62, ¶ 5 (quoting 5-803 Weinstein's Federal Evidence § 803.08[6][d] (Joseph M. McLaughlin ed., 2013)). Nevertheless, "[d]efendant[] ha[s] not shown that an expert witness may never rely upon information provided by another expert in forming his or her opinions." Hunter v. Cnty. of Sacramento, No. 2:06-CV-00457-GEB, 2013 WL 684649, at *2 (E.D. Cal. Feb. 22, 2013) (rejecting the argument that "the Federal Rules of Evidence do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation"); cf. Matter of James Wilson Associates, 965 F.2d 160, 173 (7th Cir. 1992) ("The architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him—of becoming in short the engineer's spokesman."); Villagomes v. Lab. Corp. of Am., No. 2:08-CV-00387-RLH, 2010 WL 4628085, at *4 (D. Nev. Nov. 8, 2010) ("'[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the expert ….'" (quoting U.S. Gypsum Co. v. Lafarge N. Am. Inc., 670 F. Supp. 2d 748, 758 (N.D. Ill. 2009))); but see Hill v. Fikes Truck Line, LLC, No. 4:11-CV-816 CAS, 2012 WL 5258753, at *4 (E.D. Mo. Oct. 24, 2012) (excluding expert testimony where the witness "is

not qualified to make this opinion, and the opinion is entirely that of another expert").[5]  Because

Dr. Rojas is permitted to rely on Dr. Avilés's report under Rule 703, "any flaws in [Dr. Rojas's]

opinion may be exposed through cross-examination or competing expert testimony" rather than

through exclusion under <u>Daubert</u>.  <u>Brown</u>, 402 F. Supp. 2d at 308.[6]

### C.    Disclosure of Expert Testimony

Defendant argues that, at his deposition, "Dr. Rojas opined for the first time in this

litigation … that Plaintiff may have been suffering from short term memory loss." (D.E. 40, at

11–12).  In his deposition, Dr. Rojas offered short-term amnesia as an explanation for Martínez's

denial of loss of consciousness after the accident.  (D.E. 65-1, at 53:3–13).  Pursuant to Rule 26

of the Federal Rules of Civil Procedure, an expert report "must contain … a complete statement

of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P.

26(a)(2)(B).  Rule 37 provides that, "[i]f a party fails to provide information or identify a witness

as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

There does not appear to be any direct reference to short-term amnesia in Dr. Rojas's

report.  (<u>See</u> D.E. 40-1; <u>see also</u> D.E. 65-1, at 55:11–17).  Moreover, plaintiffs offer no response

to this allegation, or explanation thereof, in their opposition.  (<u>See</u> D.E. 52).  As such, to the

extent that Dr. Rojas offers an opinion regarding plaintiff's short-term amnesia resulting from the

accident in question, Dr. Rojas shall be precluded from testifying about the same at trial.

---

[5] In contrast, in the instant case, Dr. Rojas is qualified under Rule 702 as an expert witness in neurology.  Moreover, it is defendant's contention that Dr. Rojas relied on Dr. Avilés's description of certain medical records (<u>see</u> D.E. 40, at 13), not that Dr. Rojas merely repeated Dr. Avilés's analysis and conclusions.  In addition to reviewing Dr. Avilés's report, Dr. Rojas considered Industrial Hospital medical records and Dr. Ortiz's report, and conducted his own evaluations of Martínez on two separate occasions.  (D.E. 40-1, at 1; D.E. 62, ¶ 3).

[6] Defendant also asserts that "[t]here are marked inconsistencies between Dr. Rojas' findings as stated in his report." (D.E. 40, at 13).  Defendant, however, provides no examples of such inconsistencies.

**II.**      **CONCLUSION**

For the foregoing reasons, defendant's motion *in limine* (D.E. 40) requesting exclusion of the testimony and opinions of plaintiffs' expert witness Dr. Boris Rojas Rodríguez under Rule 702 of the Federal Rules of Evidence is hereby **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **GRANTED** under Rules 26(a)(2)(B) and 37(c)(1) of the Federal Rules of Civil Procedure with respect to Dr. Rojas's opinion regarding Martínez's short-term amnesia, which is not articulated in his expert report.   However, defendant's motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of June, 2013.

s/Marcos E. López
U.S. Magistrate Judge
