IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OMAR MARTÍNEZ-MORALES, et al.,

   Plaintiffs,

       v.                                CIVIL NO. 11-1660 (MEL)

VICTAULIC CO., et al.,

   Defendants.

**OPINION AND ORDER**

Pending before the court is a motion *in limine* filed by defendant Victaulic Co. ("defendant" or "Victaulic"), along with plaintiffs' response in opposition, defendant's reply, and plaintiffs' surreply. (D.E. 41; 54; 59; 71). Defendant seeks the exclusion of the testimony concerning plaintiff Omar Martínez's ("plaintiff" or "Martínez") alleged traumatic brain injury ("TBI") because the same "is unrelated and/or unsupported by the available medical facts." (D.E. 41, at 4).

**I.   ANALYSIS**

In support of its motion, defendant argues that Dr. Richard Avilés Michel ("Dr. Avilés"), plaintiffs' expert witness in neuropsychology,[1] "admitted that there was no clinical support for the occurrence of traumatic brain injury in the medical records that he reviewed for Omar Martínez." (D.E. 41 (citing D.E. 41-1, at 2–3)). Specifically, when asked at his deposition whether there is "any clinical support for the occurrence of traumatic brain injury in the medical records," Dr. Avilés responded in the negative, stating that "[t]raumatic *head* injury is what has been mostly used." (D.E. 41-1, at 2:24–3:8 (emphasis added)). Moreover, Dr. Avilés

---

[1] In his report, Dr. Avilés concluded that Martínez experienced major depression, among other conditions and symptoms, as a result of a TBI received on July 13, 2010. (D.E. 39-1, at 11).

acknowledged that the MRI tests and CT scans that were performed, respectively, "were all normal" and "showed no laceration to the brain." Id. at 3:9–17.

Dr. Avilés, however, stated that he was "the one who assesse[d] that the traumatic brain injury occurred because of the dysfunctions [he] found" and that he based his determination on the neuropsychological evaluations which he performed. (D.E. 39-2, at 58:21–23, 61:3–7). Specifically, according to his report, Dr. Avilés conducted the following evaluations:

> Clinical Interview of Mr. Omar Martinez, Clinical Interview of Mrs. Lelis Morales Perez, Mental Status Examination, Wechsler Intelligence Scale for Adults - III (Spanish Version), Raven Standard Progressive Matrices, Bender Gestalt Visual Motor Test, Raven Standard Progressive Matrices (ABCDE), Rey Complex Figure Test, Stroop Color Word Test, Trail Making Tests A & B, Mental Status Examination, Rey Auditory Verbal Learning Test, Beck Depression Inventory, Beck Anxiety Inventory, DSM-IV-TR MultiAxial Diagnosis System

(D.E. 39-1, at 1). The results of these tests include, for instance, high variability on subtests ranging from extremely low to above average; a score on the Raven Standard Progressive Matrices reflecting the "inferior limit of the normal average classification"; deficits on attention, concentration, sequencing, simultaneous processing and mental flexibility, which Dr. Avilés notes "have been associated to the frontal lobe traumatic brain injury"; and scores within the "severe" range of the Beck Depression Inventory-II Spanish Version and the Beck Anxiety Inventory. Id. at 5–9. In his deposition, when asked about plaintiff's MRI tests and CT scans, Dr. Avilés stated that one "do[es] not necessarily have to have visual MRI signs of brain damage to have brain damage" and that "[t]here's substantial literature that indicate that you can have brain damage and some of these instruments may not be sensitive to that type of a finding." (D.E. 39-2, at 59:20–25).

Dr. Avilés is qualified to be an expert in neuropsychology under Rule 702. He received his master's degree in clinical psychology from the Caribbean Center for Postgraudate Studies in 1975 and his doctoral degree in clinical psychology from Universidad Carlos Albizu in 1991.

(D.E. 65-2, at 1). He was the director of neuropsychology at San Juan City Hospital from 1978 to 2006, and a neuropsychology professor at the Ponce School of Medicine and Health Science between 2000 and 2012. Id. at 3–4.

Despite these credentials, defendant argues in its reply that Dr. Avilés is not qualified to diagnose Martínez with TBI because he is neither a neurologist nor a medical doctor. (D.E. 59, ¶ 4). In Bado-Santana v. Ford Motor Co., 482 F. Supp. 2d 192, 196 (D.P.R. 2007), a neuropsychologist was found to be "qualified to render expert testimony" on mild traumatic brain injury allegedly resulting from a car accident. The fact that a neuropsychologist "is not a neurologist or physician does not resolve whether []he is qualified to render expert testimony" on mild traumatic brain injury. Id. at 195 (citing United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987) ("Expertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies.")). As the court pointed out in Bado-Santana, "the American Psychological Association has stated that neurological examinations are very limited in their capacity to detect brain damage, and that neuropsychological testing is the only means of diagnosing some forms of brain damage." 482 F. Supp. 2d at 195. As a result, the Bado-Santana court concluded that the neuropsychologist was qualified to testify as an expert witness on the issue of mild traumatic brain injury.[2] Defendant has articulated no argument that the specific tests performed by Dr. Avilés do not constitute reliable principles and methods by which a neuropsychologist can determine whether a TBI exists or has occurred. Defendant has pointed to no evidence contradicting Dr. Avilés's contention that there is "substantial literature" indicating

---

[2] Defendant cites a case by the Circuit Court of Virginia, City of Portsmouth, in which the court addressed the question of whether, under Virginia law, "the Virginia Supreme Court would permit a neuropsychologist to testify to causation as another exception to the general rule" set forth by the Virginia Supreme Court that "only a medical doctor may render an opinion regarding the cause of a physical human injury." McCarthy v. Atwood, 2005 WL 937271, at *5 (Va. Cir. Ct. 2005) (internal quotation omitted). The court found that it would not. Id. at *7. Unlike in McCarthy, the binding standard—as in Bado-Santana—is Rule 702, not Virginia law. Defendant has not cited any authority indicating that Rule 702 in its current form requires experts testifying about the cause of a physical human injury to be a medical doctor. As such, Bado-Santana is more persuasive on this issue.

that brain damage can exist despite the inability of MRI tests and CT scans to detect the same. (D.E. 39-2, at 59:20–25). As such, no viable reason has been presented to preclude testimony pertaining to TBI.[3]

## II. CONCLUSION

For the foregoing reasons, defendant's motion *in limine* (D.E. 41) requesting exclusion of testimony pertaining to traumatic brain injury is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of June, 2013.

                                             s/Marcos E. López
                                             U.S. Magistrate Judge

---

[3] In its reply, defendant also argues that excluding Dr. Avilés's testimony pertaining to TBI "doom[s] the opinions of Dr. Boris Rojas" ("Dr. Rojas") regarding the same. (D.E. 59, ¶ 3). Nevertheless, the court concludes here that Dr. Avilés's testimony pertaining to TBI shall not be excluded. Thus, such argument is rejected. Defendant also contends that Dr. Rojas did not review all available medical records. Id. To the extent that such argument is relevant to the pending motion *in limine*, the opinion and order on the motion *in limine* concerning Dr. Rojas (D.E. 81) is hereby incorporated by reference.